# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER O'BRIEN individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COMPASS GROUP USA, INC.; COMPASS ONE, LLC; COMPASS 2K12 SERVICES, LLC; LATHEM TIME, INC.; "JOHN DOE," "JANE DOE," AND "XYZ CORP." (FICTITIOUS NAMES),<br><br>Defendants. | NO. 2:17-cv-13327-JLL-JAD<br><br><br><br><br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff CHRISTOPHER O'BRIEN, individually, and on behalf of others similarly situated, by and through his attorneys at the LAW OFFICES OF SADAKA ASSOCIATES, LLC, allege against COMPASS GROUP USA, INC.; COMPASS ONE, LLC; COMPASS 2K12 SERVICES, LLC; LATHEM TIME, INC.; "JOHN DOE," "JANE DOE," AND "XYZ CORP." (FICTITIOUS NAMES) on information and belief as follows:

## **INTRODUCTION**

1. This Class Action seeks damages on behalf of a class of hourly-paid persons who were not provided proper payment for the hours they worked.

2. Through a common and uniform course of conduct, Defendants COMPASS GROUP USA, INC.; COMPASS ONE, LLC; COMPASS 2K12 SERVICES, LLC; "JOHN DOE," "JANE DOE," AND "XYZ CORP." (FICTITIOUS NAMES) and other agents, willfully failed to properly pay the Plaintiff and other hourly wage Class members.

1

3. LATHEM TIME, INC. provided the instrumentality to perpetuate the scheme to short the wages of the Plaintiff and Class and it conspired against the Plaintiff and Class after the scheme was underway.

## PARTIES

4. Plaintiff, CHRISTOPHER O'BRIEN ("Plaintiff") was at all times relevant, a resident of the State of New Jersey, residing in the borough of Bogota in Bergen County.

5. At all times relevant, Defendant COMPASS GROUP USA, INC. was a Delaware Corporation, which provided foodservice management and support services to various locations, including secondary schools and has its principal place of business located at 2400 Yorkmount Road, Charlotte, N.C. 28217.

6. At all times relevant, Defendant COMPASS ONE, LLC was a North Carolina Corporation which provided foodservice management and support services to various school locations and has its principal place of business located at 2400 Yorkmount Road, Charlotte, N.C. 28217.

7. At all times relevant, Defendant COMPASS 2K12 SERVICES, LLC was a North Carolina Corporation which provided foodservice management and support services to various locations, including secondary schools and has its principal place of business located at 2400 Yorkmount Road Charlotte, N.C. 28217.

8. Defendants COMPASS GROUP USA, INC.; COMPASS ONE, LLC; COMPASS 2K12 SERVICES, LLC are hereinafter referred to as the "COMPASS Defendants" or "COMPASS."

9. At all times relevant, Defendant LATHEM TIME, INC., hereinafter "LATHEM Defendant" or "LATHEM", was engaged in the business of designing, manufacturing, marketing,

2

and distributing time clocks and time clock software. LATHEM has its principal place of business at 200 Galleria Parkway, Suite 330, Atlanta, GA 30339.

10. All Defendants conducted business throughout New Jersey and the United States at all times relevant herein.

## JURISDICTION

11. Jurisdiction is proper in this Court under Section 301 of the National Labor Relations Act, the parties are completely diverse in citizenship, and because the amount in controversy exceeds $75,000.00 per 28 U.S.C. § 1332(a).

## FACTUAL ALLEGATIONS

12. All previous paragraphs are incorporated herein by reference.

13. For all times relevant, COMPASS Defendants utilized a time clock-system and accompanying software provided by the LATHEM Defendant. This system and software tracks the time when COMPASS's hourly wage employees clock in and clock out of work.

14. This system and software for recording time requires each hourly wage employee to "punch" an individual timecard when he or she clocks in and clocks out of work.

15. The time clock utilized by COMPASS was for all times relevant to this Complaint, a LATHEM 7000e model; which was manufactured, sold, marketed, updated, and maintained by LATHEM.

16. LATHEM's model 7000e time clock records the "clock-in" time, "clock-out" time, and total hours worked in $1/60^{th}$ of an hour interval.

17. Accordingly, if an hourly employee worked a total of six (6) hours and thirty (30) minutes in one shift, the timecard would display "6:30."

18. COMPASS Defendants utilize a payroll software which records hours worked in intervals of 1/100th.

19. Accordingly, if an hourly employee worked a total of six (6) hours and thirty (30) minutes, the COMPASS Defendants should record hours worked as "6.5."

20. COMPASS Defendants, however, failed to account for the discrepancy created between utilizing these two different described methods of recording time.

21. Continuing with the above example, when the LATHEM model 7000e records 6:30 hours worked, the COMPASS Defendants only pay their employee for 6.3 hours worked, and not the 6 and ½ hours he or she actually worked.

22. COMPASS Defendants have perpetuated this wage discrepancy to their advantage and into the present.

23. Plaintiff began working for COMPASS Defendants in November 2011 as a food services associate and cook in the Hackensack School District.

24. As part of his employment with the COMPASS Defendants, and after an initial trial period, Plaintiff joined the Service Employees International Union, Local Chapter 32BJ (hereinafter "SEIU").

25. Sometime in mid-October 2015, Plaintiff noticed discrepancies in the wages he received from the Defendants.

26. Specifically, Plaintiff noticed that the hours he worked did not match the hours reported on his pay-stubs.

27. Plaintiff observed that the time recorded on his timecard, which was being recorded in intervals of 1/60th of an hour, was not being properly converted to 1/100th of an hour intervals; this discrepancy resulted in shortages of his pay.

28. The Collective Bargaining Agreement ("CBA") governing the Plaintiff's conduct with management when he joined the SEIU in 2011, upon information and belief, described a grievance process that included the need for the Plaintiff to first discuss any pay disputes with his designated union representative.

29. Accordingly, on or about October 31, 2015, Plaintiff began to bring these wage discrepancies to the attention of his then union representative, Ms. Edith Villa-Vincenzio.

30. Ms. Villa-Vincenzio's response to these complaints was that she was not an expert on wage law and she explained that even though it may seem unfair, there was probably little or nothing that the Plaintiff could do about it.

31. However, she eventually appeared to acknowledge the discrepancies and told the Plaintiff that she would research the issue further.

32. Ms. Villa-Vincenzio, after a period of investigation, reported to the Plaintiff that she did not have a resolution for his complaint, but that she would speak to another union member, who was more familiar with wage law, about the issue.

33. Upon hearing this, on or about January 6, 2016, and with the direct knowledge of his union representative, Plaintiff brought the complained of wage discrepancies to the attention of his COMPASS manager, Ms. Catherine Scotto.

34. During a subsequent meeting with Ms. Scotto, she appeared to acknowledge the complained of wage discrepancies and informed the Plaintiff that she would investigate the issue with a representative of the LATHEM Defendant.

35. Ms. Scotto later reported that LATHEM found no problems with the time clock, and that according to LATHEM, Plaintiff's time was being paid properly.

36. This winter 2016 investigation was the first time that LATHEM was consulted and found nothing wrong with the calculation and payment of Plaintiff's wages. It is also the first evidence of LATHEM's providing misinformation about the wage issue that either obstructed justice and/or improperly benefitted COMPASS and, indirectly, itself.

37. Thereafter, Plaintiff continued to notice wage discrepancies on his paycheck, and he continued to pursue the issue with management, with the full knowledge of his union representative.

38. As such, on or about March 6, 2016, Plaintiff again discussed the issue with Ms. Scotto, who then set up a meeting with Helen McKenna, the District Manager for the COMPASS Defendants' Mid-Atlantic region.

39. During this meeting, and in response to Plaintiff's explanation of these pay discrepancies, Ms. McKenna initially took the position that there was no wage discrepancy and that there was nothing missing from Plaintiff's paycheck.

40. Ms. McKenna and Ms. Scotto, however, agreed to investigate the matter further and provide the results of that investigation to the Plaintiff.

41. The Plaintiff followed up with Ms. McKenna when he could about the results of this investigation for about two months after this meeting.

42. Then, on May 9, 2016, Ms. McKenna and Ms. Scotto, wrote the Plaintiff that "[a]ccording to Lathem the hours and minutes have added correctly… [and that a] Chartwells Payroll Supervisor has also reviewed the results to be correct."

43. This spring 2016 investigation into the Plaintiff's complaints was the second time that the LATHEM Defendant was consulted about the Plaintiff's wage discrepancy, and the first time, upon information and belief, that a COMPASS supervisor reviewed the issue as well. This

is also the second instance of LATHEM's providing misinformation that either obstructed justice in this case and/or improperly benefitted COMPASS and, indirectly, itself.

44. After receiving this correspondence, and being unsatisfied with the results of the investigation, and the fact that he continued to see wage discrepancies in his paycheck, Plaintiff again contacted his union representative and inquired about any options that were available to him and the union.

45. His union representative, Ms. Villa-Vincenzio, again informed Plaintiff that she was not an expert in wage and hour law and that although the pay discrepancy seemed unfair, there was little or nothing that could be done to rectify the problem other than the investigation that had already taken place, but she encouraged him to try to get a resolution on it with management.

46. Following this, on or about June 3, 2016, Plaintiff sent an email to Mr. Robert Spuler, Compass Group's Regional Human Resources Manager, requesting a review of this reported wage discrepancy.

47. Mr. Spuler, responded that "[t]he company worked with the timekeeping vendor and they confirmed that your times were correct. I was also told that the company provided you a letter telling you that the situation had been looked into and no issues were found."

48. Mr. Spuler's communication was referring to the spring 2016 investigation by the COMPASS and LATHEM Defendants.

49. Mr. Spuler also instructed the Plaintiff to contact his union representative if he had any further questions.

50. Plaintiff then again contacted his union representative, Ms. Villa-Vincenzio. She informed him, again, that she was not an expert in wage and hour law and that although the pay discrepancy seemed unfair, there was little or nothing that could be done to rectify the problem,

but that it could possibly be handled by another union member who knew more about wage and hour law.

51. Sometime thereafter, Ms. Villa-Vincenzio was replaced as union representative by Peter Silva.

52. Having heard nothing about Ms. Villa-Vincenzio's findings before she left, Plaintiff brought his wage complaints to Mr. Silva.

53. Mr. Silva, however, did not agree to address the Plaintiff's concerns for some time. Plaintiff left him several phone messages over the course of many weeks in the Spring of 2017—and at least one of these messages included a threat to file a grievance against Mr. Silva for breach of fiduciary duty as union representative.

54. Following that threat, and in June of 2017, Mr. Silva made it public that no agreement between the union and management had been reached for what was then the current 2016 to 2017 school year—meaning that no investigation into the Plaintiff's grievance had been occurring during this time.

55. The Plaintiff was terminated on or about June 30, 2017, when the COMPASS Defendants' contract ended with the Hackensack School District.

56. The Union and COMPASS, however, signed a Collective Bargaining Agreement, covering the 2016 to 2020 school years in September of 2017. (See ECF 16-2: Certification of COMPASS Def's Motion to Dismiss, Ex. C at 26).

57. This CBA is dated three months after the Plaintiff was terminated and three months after COMPASS had no business dealings with the SEIU union.

58. As such, this CBA is a fraud on its face and cannot be used by COMPASS to justify the barring of Plaintiff's wage claims in this Court.

59. The Union breached its duty to the Plaintiff and all of its hourly wage members employed by COMPASS by not acting to enforce the grievance procedure in the CBAs that were applicable during the time when these wage shortages were taking place.

60. Moreover, the Union did not properly investigate the wage discrepancy issue and it did not enforce the terms of any CBA that was relevant to this complaint.

61. Additionally, LATHEM's conspiracy with the COMPASS Defendants to obstruct justice in this case cannot be denied.

62. Objectively, LATHEM had the means and instrumentality to instruct the COMPASS Defendants how the wage discrepancy was occurring, but never did—and—LATHEM twice reported to COMPASS that no wage discrepancy existed. This was done intentionally and for the benefit of the COMPASS Defendants, and, secondarily, to LATHEM.

63. Indeed, LATHEM would have been publicly embarrassed and could have lost substantial amounts of business because of the problems associated with its products.

64. Only after it was clear that LATHEM, COMPASS, and his Union had failed the Plaintiff, did he file this action.

## CLASS ALLEGATIONS

65. All previous paragraphs are incorporated herein by reference.

66. Pursuant to Federal Rule of Civil Procedure Rule 23, Plaintiff brings this action on behalf of himself and all other hourly wage employees of the COMPASS Defendants who were deprived hourly wages.

67. This action is brought as a class action and may be so maintained pursuant to the provisions of Federal Rules of Civil Procedure, Rule 23 as the numerosity, commonality, typically, and adequacy requirements for maintaining a class action under federal law are satisfied.

68. The members of this Class are so numerous as to render joinder impracticable. There have been many employees of the COMPASS Defendants who have been deprived of proper compensation.

69. Joinder of all these individuals is impracticable because of the large number of Class members and the fact that Class members are likely dispersed over a large geographic area, with some members residing outside of Bergen County and outside the State of New Jersey.

70. Common questions of law and fact exist as to all members of the Class that predominate over any questions that effect only individual members of the Class.

71. These common questions of law and fact include, without limitation, whether the course of conduct of the COMPASS Defendants to shorten its employees' wages and obstruct the Plaintiff's wage claim was unconscionable and whether LATHEM conspired with the COMPASS Defendants to hide the complained of same wage discrepancies.

72. Plaintiff's clams are typical of the claims of the members of the Class. All members of the Class are also fully ascertainable. Plaintiff and all members of the Class have sustained damages as a result of the COMPASS and LATHEM Defendants' conduct. The harms suffered by the Plaintiff are typical of the harms suffered by the Class.

73. The representative Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of all hourly wage employees who have been shorted in the Class. Plaintiff has no interests that are adverse to the interests of the members of the Class.

74. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since joinder of all the COMPASS Defendants' hourly employees is

impracticable, given the large number of Class members and the fact that they are dispersed over a large geographic area.

75. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress these violations on their own. The cost to the judicial system would also be enormous. Individualized litigation would also magnify the delay to all parties and the bog down the civil justice system unnecessarily.

76. The named Plaintiff has retained counsel with experience and success in the prosecution of class action and employment civil litigation claims. Plaintiff is represented by the Law Offices of Sadaka Associates, LLC. Plaintiff's counsel has the resources, expertise and experience to successfully prosecute the action against the Defendants. Upon information and belief, no conflict exists between the Plaintiff and members of the Class, or between counsel and members of the Class.

77. Upon information and belief, there are no other actions pending to address the named Defendants' conduct in shortening the wages of the Class.

78. As such, Plaintiff seeks Class Certification in that the questions of law or fact common to all members of the Class predominate over any questions affecting only individual members, and that a class action is far superior and more economical to other available methods for the fair and efficient adjudication of this Complaint.

## COUNT I:
## BREACH OF CONTRACT
## AS TO
## COMPASS DEFENDANTS

79. All previous paragraphs are incorporated herein by reference.

80. Plaintiff and others similarly situated entered into an employment agreement with the COMPASS Defendants.

81.     In return for work done and time spent working for COMPASS Defendants, and pursuant to either an at will employment agreement or a written employment contract, the named Plaintiff and others similarly situated were to be paid for the time that they worked.

82.     COMPASS Defendants breached their employment agreement by failing to pay the named Plaintiff and others similarly situated all the wages due for the benefits provided by the Class and named Plaintiff.

83.     COMPASS Defendants failed to accurately pay the named Plaintiff and others similarly situated for the work performed.

84.     The named Plaintiff and others similarly situated have been damaged due to the actions of the COMPASS Defendants.

**WHEREFORE,** the Plaintiff demands judgment against the COMPASS Defendants and requests compensatory damages for all unpaid wages, prejudgment and post-judgment interest as allowed by law, costs of suit and attorney's fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

### COUNT II:
### BREACH OF IMPLIED CONTRACT
### AS TO
### COMPASS DEFENDANTS

85.     All previous paragraphs are incorporated herein by reference.

86.     Plaintiff and others similarly situated entered into an employment agreement with the COMPASS Defendants during the years of 2016 and 2017—a time period when no Collective Bargaining Agreement was in place with the Plaintiff's or Class's Union.

87.     Any Collective Bargaining Agreement entered into after the COMPASS Defendants' contract to provide food services ended is void on its face and unenforceable.

88. In return for work done for COMPASS Defendants, the named Plaintiff and others similarly situated were to be paid for the time that they worked.

89. COMPASS Defendants breached their duty to the Plaintiff and the Class by failing to pay the Plaintiff and others similarly situated all the wages due to them.

90. COMPASS Defendants failed to accurately pay the named Plaintiff and others similarly situated for the work performed.

91. The named Plaintiff and others similarly situated have been damaged due to the actions of the COMPASS Defendants.

**WHEREFORE,** the Plaintiff demands judgment against the COMPASS Defendants and requests compensatory damages for all unpaid wages, prejudgment and post-judgment interest as allowed by law, costs of suit and attorney's fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

### COUNT III:
### CIVIL CONSPIRACY
### AS TO COMPASS DEFENDANTS &
### LATHEM TIME, INC.

92. All previous paragraphs are incorporated herein by reference.

93. COMPASS Defendants and LATHEM conspired and agreed among themselves to ignore the discrepancies in time reported by the Plaintiff to deprive him and the Class from being reimbursed for their unpaid wages.

94. LATHEM participated in two sham investigations that acted to obstruct justice in this case.

95.    LATHEM had the means and instrumentality to instruct the COMPASS Defendants how the wage discrepancy was occurring, but never did—and this was done intentionally and for the benefit of the COMPASS Defendants and, secondarily, to LATHEM.

96.    As a result of LATHEM's participation in this scheme to defraud the Plaintiff and all other similarly situated COMPASS hourly wage employees, LATHEM and COMPASS Defendants have improperly benefitted to the detriment of the Class.

**WHEREFORE,** the Plaintiff demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages, prejudgment and post-judgment interest as allowed by law, costs of suit and attorney's fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgement against Defendants, and each of them, individually, jointly and severally and request compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

    a. Compensatory damages for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by plaintiffs, health and medical care costs, lost wages, together with interest and costs as provided by law;

    b. Restitution and disgorgement of profits;

    c. Reasonable attorneys' fees;

    d. The costs of these proceedings;

    e. All ascertainable economic damages;

    f. Punitive damages; and

    g. Such other and further relief as this Court deems just and proper.

                    Respectfully Submitted,

                    __/s/ Mark T. Sadaka_____
                    Mark T. Sadaka, Esq.
                    Michael H. Bowman, Esq. (to be admitted *Pro Hac Vice*)
                    **SADAKA ASSOCIATES, LLC**
                    155 North Dean Street, Suite 4-D
                    Englewood, NJ 07631
                    Tel: (201) 266-5670
                    Fax: (201) 266-5671
                    Email: mark@sadakafirm.com

Dated: April 4, 2018